IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST, | § § § § § | |
| Plaintiff, | | |
| v. | § § | No. 3:19-cv-1387-G-BN |
| E. KYLE WALL, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 19.

Defendant E. Kyle Wall filed a motion to dismiss Plaintiff Citibank, N.A.'s complaint for breach of contract. *See* Dkt. Nos. 9-11. In his motion, Mr. Wall argues that Citibank has failed to adequately plead that it is the owner of the contract it is seeking to enforce. Mr. Wall argues that the contract Citibank is attempting to enforce actually belongs to Citibank's predecessor, Nationstar Mortgage LLC. Mr. Wall further contends that Citibank lacks both the capacity and standing to bring this action and that this Court therefore lacks subject matter jurisdiction over this case because Nationstar Mortgage LLC, a Texas citizen, is the proper party in this lawsuit.

Citibank responds that Mr. Wall's capacity and standing arguments fail because they go to the merits of Mr. Wall's case and the parties are entitled to conduct discovery

on the matter. Citibank further argues that, because it is now the owner and mortgagee of the loan and deed of trust executed by Mr. Wall, it is the owner of all the rights and obligations under the loan, including the contract that it is seeking to enforce.

For the reasons explained below, the Court should deny Mr. Wall's motion to dismiss.

## Background

Citibank, N.A. is the current owner and mortgagee of a loan and deed of trust initially entered into on February 8, 2000, between E. Kyle Wall and Bank of America, N.A. *See* Dkt. No. 1 at 2. Under the deed of trust, Mr. Wall pledged property located at 4 Abbotsford Court, Dallas, Texas 75225, to secure a $201,620.00 loan. *See id.*

Bank of America was the original owner and mortgagee of the loan and deed of trust, but it transferred ownership to Nationstar Mortgage LLC on November 8, 2012. *See* Dkt. No. 15 at 3. Citibank alleges that Mr. Wall defaulted on his loan while Nationstar was still the owner of the loan and deed of trust. *See* Dkt. No. 1 at 2. Citibank further claims that Mr. Wall attempted to stall or avoid foreclosure by filing a lawsuit against Nationstar styled as *E. Kyle Wall v. Nationstar Mortgage LLC and Nationstar Mortgage, LLC,* in the 298th District Court of Dallas County, Texas. *See* Dkt. No. 1.

According to Citibank, Nationstar and Mr. Wall entered into a settlement agreement (the "Contract") on or about April 25, 2017, to resolve the lawsuit that was filed in the 298th District. *See id.* at 2-3; *see* Dkt. No. 1-1. The Contract provides that

Mr. Wall would release his claims against Nationstar in exchange for a loan modification. *See* Dkt. No. 1 at 3. From April until November 2017, Nationstar and Mr. Wall worked towards a loan modification under the Contract. *See id.* Then, on November 6, 2017, Mr. Wall returned a loan modification proposal with terms that deviated substantially from what had been previously agreed upon by the parties. *See id.* Citibank alleges that by deviating from the proposed terms of the Contract, Mr. Wall's "intentions were clearly to further delay foreclosure and his compliance with the Contract." *Id.*

On June 10, 2019, Citibank and Mr. Wall unsuccessfully conducted mediation pursuant to the terms of the Contract. *See id.* On that same day, Citibank filed this action against Mr. Wall, alleging breach of contract for failure to comply with the terms of the Contract into which Mr. Wall entered with Citibank's predecessor. *See id.* at 5.

In Citibank's complaint, it alleges that Citibank is Nationstar's successor and owner of Mr. Wall's loan and deed of trust. *See id.* at 1. Citibank further claims that it attempted to resolve the dispute arising out of the Contract that was originally entered into between Mr. Wall and Nationstar. *See id.* at 4. Citibank alleges that Mr. Wall has ignored its attempts to enter into a modified loan agreement and has refused to comply with the terms of the Contract. *See id.*

On August 12, 2019, Mr. Wall filed a motion to dismiss Citibank's complaint. *See* Dkt. Nos. 9-11. In Mr. Wall's motion, he argues that he has at all times been current on his loan. *See* Dkt. No. 10 at 2. He further argues that Citibank does not have

capacity or standing to sue under the Contract, because he entered into the Contract with Nationstar and only Nationstar may enforce it. *See* Dkt. No. 10. To support his argument, Mr. Wall asserts that, when he entered into the Contract with Nationstar, it represented to him that "the claims, suits, rights and/or interests which are the subject matter hereto are owned by the party asserting same, have not been assigned, transferred or sold and are free of encumbrances." *Id.* at 2. In essence, Mr. Wall argues that Citibank has not adequately pled that it is the owner of the Contract it is trying to enforce. *See id.* And Mr. Wall argues that, because Nationstar is a Texas citizen and the appropriate plaintiff in this case, complete diversity does not exist among the real parties in interest and therefore this Court lacks jurisdiction. *See id.* at 4.

In response to Mr. Wall's Motion to Dismiss, Citibank shows that, on March 12, 2018, Nationstar assigned ownership of the deed of trust "and the full benefit of all the powers and of all the covenants and provisos therein contained." Dkt. No. 15 at 4. Citibank argues that, as a result, it owns all of the rights and obligations under Mr. Wall's loan including the Contract that is associated with the loan. *See* Dkt. No. 14 at 10. According to Citibank, it was assigned Nationstar's interest under the deed of trust, including any proposed loan modification, which is the subject of the Contract in dispute. *See id.*

Alternatively, Citibank argues that it is entitled to discovery to resolve any doubt as to the enforceability of the Contract based on the nuance of the terms of the Contract. In this regard, Citibank contends that Mr. Wall's arguments against enforcement

should be reserved for summary judgement or trial. *See id.*

The undersigned concludes that Citibank has adequately pled that it is the owner of the Contract that it seeks to enforce and that the Court should deny Mr. Wall's motion to dismiss.

## Legal Standards

I.      Federal Rule of Civil Procedure 12(b)(1) Standard of Review

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As such, a federal district court must dismiss a complaint for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations omitted). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (internal citations omitted).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

And where, like here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack of subject is considered "facial," and the Court need look only to the sufficiency of the allegations of the plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A "factual" attack on jurisdiction, on the other hand, is based on affidavits, testimony, and other evidentiary material. *See id.* Under such an attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

"This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

-6-

II.     Federal Rule of Civil Procedure 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (*quoting Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements,

will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The Supreme Court of the United States "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson*, 135 S.Ct. at 347; emphasis added by Smith), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S.Ct. at 346.

## Analysis

I.   <u>This Court has subject matter jurisdiction to hear this action.</u>

Mr. Wall argues that Citibank has not provided the Court with sufficient facts to establish jurisdiction, *see* Dkt. No. 10 at 7, and provides two independent bases to support his position. Each fails to persuade.

First, Mr. Wall argues that, because Nationstar is the owner of the Contract and a citizen of Texas, there is no diversity of citizenship as required by 28 U.S.C. § 1332. *See* Dkt. No. 10 at 8.

But Citibank alleges that it owns the rights under the Contract because Nationstar transferred its ownership interest. In Citibank's complaint, it alleges that it is a banking association with its principle office in South Dakota. *See* Dkt. No. 1 at 1. Citibank further alleges that Mr. Wall is domiciled in Dallas County, Texas. *See id.* And Citibank claims that it is the owner and mortgagee of the loan and deed of trust that was executed between its predecessor and Mr. Wall. *See id.* at 2. Citibank also alleges that the amount in controversy threshold is met because this is a breach of contract action involving repayment of a debt in excess of $355,000. *See id.*

Second, Mr. Wall argues that, even if Citibank is a proper plaintiff in this case, it has not adequately pled its own citizenship. According to Mr. Wall, Citibank, as trustee, must do more to show that it is the real party in interest, as opposed to the beneficiaries of the trust. *See* Dkt. No. 10 at 8. The undersigned disagrees.

Mr. Wall contends that Citibank fails to show that complete diversity exists and argues that Citibank has failed to provide the Court with facts or evidence to show that it is the citizenship of Citibank as the trustee, and not the citizenship of the trust's beneficiaries, that controls for diversity purposes. For support, Mr. Wall cites *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S.Ct. 1012, 1016 (2016), and *Justice v. WellsFargo Bank, N.A.*, 674 F. App'x 330, 332 (5th Cir. 2016). Mr. Wall argues that

these cases stand for the proposition that a trust must actually show that it is the real party in interest in order to establish that it is a proper plaintiff. *See* Dkt. No. 10 at 8-9.

"When a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued." *Americold Realty Trust*, 136 S. Ct. at 1016. And, "[w]hen a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs." *Id.* In *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458 (1980), the Supreme Court held that, when a trustee is the real party to the controversy by virtue of the fact that it possesses powers to hold, manage, and dispose of the trust's assets for the benefit of the trust's beneficiaries, "[t]he beneficiaries [are] not necessary parties and their citizenship is immaterial." *Id.* at 464.

The Fifth Circuit recently addressed the issue of whether the citizenship of the trustee or the trust beneficiaries controls for diversity purposes in a suit brought by a trustee of real estate securitization trusts in light of *Americold*:

> In *Justice v. Wells Fargo Bank National Association,* 674 F. App'x 330 (5th Cir. 2016) (per curiam), an unpublished opinion, we addressed a similar question involving a trustee of a mortgage securitization trust and held that, for the purpose of determining diversity jurisdiction, the citizenship of the trustee is what matters. *See id.* Put another way, *Justice* held that the *Navarro* rule still controls when the trustee sues or is sued in its own name.

*Byname v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24,* 866 F.3d 351, 357 (5th Cir. 2017). The Fifth Circuit in *Byname* confirmed that the

-10-

trustee had "real and substantial" control over the trust pursuant to the applicable pooling and servicing agreement. *See id.* ("For example, under the Pooling and Servicing Agreement (PSA) for the trust, 'all right, title and interest in and to the Initial Mortgage Loans' were transferred" to the trustee.).

Here, Citibank alleges that it is the owner and mortgagee of the loan and deed of trust executed by Mr. Wall. *See* Dkt. No. 1 at 2. In its response, Citibank shows that Nationstar transferred ownership of the deed of trust as well as "the full benefit of all the powers and of all the covenants and provisos therein contained." Dkt. No. 15 at 4. Citibank has showed that it holds power to manage and dispose of the deed of trust, and that it is acting in its capacity as trustee and by virtue of the trustee powers it holds by bringing this action.

Because Citibank has filed this lawsuit in its capacity as trustee, it is its citizenship as trustee, not the citizenship of the beneficiaries of the trust, that controls for diversity jurisdiction purposes. And, because Citibank is a national banking associated that has its principal office in South Dakota, Citibank is a citizen of South Dakota for diversity purposes. And, where Mr. Wall is indisputably a citizen of Texas and the amount in controversy exceeds $75,000, Citibank has established jurisdiction as 28 U.S.C. § 1332 requires.

II. When Nationstar transferred ownership of the Deed of Trust to Citibank, it assigned all the rights and obligations therein contained.

The undersigned concludes that Citibank has adequately pled that it is the owner of the rights and obligations of the Contract that Mr. Wall and Nationstar entered into.

The Court is empowered to consider affidavits, testimony, and other evidentiary material in deciding a 12(b)(1) motion to dismiss. *See Ramming,* 281 F.3d at 161. However, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). But, pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

Here, in Citibank's original complaint, it attaches the Contract and the subsequent communication breakdown between Mr. Wall and Nationstar as exhibits. *See* Dkt. No. 1-1. Citibank also alleges that Nationstar is its predecessor. *See* Dkt. No. 1. Citibank explains that it is now the "owner and mortgagee of a certain loan and deed

of trust executed on or about February 8, 2000 by and in between [Mr. Wall] and [Citibank's] predecessor." Dkt. No. 1 at 2. And Citibank alleges that, as recently as June 10, 2019, Citibank and Mr. Wall – not Nationstar and Mr. Wall – attempted to mediate their dispute per the terms of the Contract. *See* Dkt. No. 1 at 4.

In Mr. Wall's motion to dismiss, he first argues that Citibank does not have either capacity or standing to bring this action. *See* Dkt. No. 10 at 5. According to Mr. Wall, the Contract at issue in this case is between him and Nationstar. *See id.* at 6. Thus, Mr. Wall argues, Citibank cannot sue him for breach of contract because the claims asserted in the Complaint belong solely to Nationstar. *See id.* at 7. Mr. Wall claims that Citibank "provides no proof nor does it allege facts in its Complaint that support" its assertion that Citibank now owns the rights under the Contract that was originally made between Mr. Wall and Nationstar. *See id.* at 4.

Citibank responds by asserting that it is Nationstar's successor and therefore has capacity to enforce the agreement originally entered into by Nationstar and Mr. Wall. *See* Dkt. No. 14. Citibank argues that, when Nationstar transferred ownership of Mr. Wall's loan, Nationstar also assigned all the rights and obligations connected to it. *See id.* at 6. According to Citibank, because it is now the owner and mortgagee of the underlying loan, "[r]egardless of who was the original party to the Contract, [Citibank] is now the owner of all rights and obligations under the Loan and the Contract associated with the Loan." Dkt. No. 14 at 6. In essence, Citibank argues that, when Nationstar transferred ownership, Nationstar also assigned all of the rights and

-13-

obligations under the Contract as well.

An assignment is "a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person." *Wolters Village Mgmt. Co. v. Merchants & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir.1955) (internal citations and marks omitted). Once a valid assignment is made, "the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) of Contracts § 317(1) (1981); *see also FDIC v. McFarland*, 243 F.3d 876, 887 n. 42 (5th Cir. 2001) ("[I]t is generally true that an assignee takes all of the rights of the assignor, no greater and no less." (internal quotations omitted)).

Under this doctrine, once a valid assignment is made, the assignee stands in the shoes of the assignor and obtains the rights and interest that the assigner had at the time of assignment. *See, e.g.*, *Kirby Forest Indus., Inc. v. Dobbs,* 743 S.W.2d 348, 354 (Tex. App. – Beaumont 1987, writ denied). And the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the obligation. *See J.W.D., Inc. v. Federal Ins. Co.,* 806 S.W.2d 327, 329 (Tex. App.– Austin 1991, no writ).

In Citibank's response to Wall's motion to dismiss, it attaches the corporate assignment documents assigning ownership of the deed of trust from Nationstar to Citibank. *See* Dkt. No. 15. The corporate assignment of deed of trust provides

> that for good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $201,620.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

*Id.* at 4. According to the corporate assignment of deed of trust, when Nationstar assigned ownership of the deed of trust, it also transferred "the full benefit of all the powers and all of the covenants and provisos therein contained." *Id.*

The undersigned concludes that the assignment of the deed of trust was also an assignment of all the powers and covenants and provisos incorporated into the deed of trust. This necessarily includes the Contract entered into modifying the terms of the underlying loan and the lien securing the loan.

Additionally, when the parties, by their acts, have placed a certain construction on their contract, that construction should be given weight. *See Gravel Co. v. Dennehy Const. Co.*, 185 S.W.2d 583, 587 (Tex. Civ. App. – Eastland 1945) ("The acts of the parties themselves, indicating the construction they mutually placed upon a contract at the time, including acts done in the course of performance, may be considered in interpreting it where it is ambiguous or its meaning is doubtful. Such a practical construction by the parties is entitled to great weight, and according to many of the cases will control the interpretation of the contract, and be adopted and enforced by the court."). Here, Mr. Wall does not dispute that he has been in contact with Citibank, as

opposed to Nationstar, to negotiate the terms of the Contract, when, for example, the parties attempted to mediate those terms on June 10, 2019.

    III.    <u>Further Discovery is Warranted.</u>

Although couched in terms of capacity to sue and Article III standing, Mr. Wall's theory of non-liability under the Contract go to the merits of whether an enforceable agreement exists between him and Citibank. The enforceability of a contract is a legal question that is more properly the subject of a motion for summary judgment. *Westlake Petrochems., L.L.C. v. United Polychem, Inc.,* 688 F.3d 232, 238-39 (5th Cir. 2012). The undersigned concludes that the parties are entitled to discovery on the matter and to present their arguments either at the summary judgment stage or at trial.

## Recommendation

For the reasons explained above, Mr. Wall's motion to dismiss should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written

objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 9, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE